IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CMDS RESIDENTIAL, LLC, <br><br> v. <br><br> MAYOR AND CITY COUNCIL OF BALTIMORE. | Civil Action No. CCB-21-1774 |

## **MEMORANDUM**

On February 1, 2024, the court granted the City's motion for summary judgment as to Counts II, IV, VI, VIII, and X of CMDS's complaint. Mem. Op., ECF 84. The court denied summary judgment for both parties as to Counts I, III, V, VII, and IX, and dismissed Count XI. *Id.* Two weeks later, the City moved for reconsideration of the decision to deny part of its motion for summary judgment. Mot. for Reconsideration, ECF 87 ("Mot."). CMDS opposed reconsideration, Opp'n to Mot., ECF 88 ("Opp'n"), and the City replied, Reply in Supp. of Mot., ECF 92. The motion is now ripe for resolution and no oral argument is necessary. *See* Local Rule 105.6. For the following reasons, the motion for reconsideration will be denied.

## **BACKGROUND**

CMDS sued the City after it denied CMDS's application for a use and occupancy ("U&O") permit to open a residential substance-abuse treatment facility in a building located at 6040 Harford Road (the "Property"). Mem. Op. at 28-33. When CMDS initially discussed its desired use with the City's Zoning Administrator he tentatively agreed that, under the City Code, the use would be permitted as of right based on the Property's prior authorized use as a nursing home, and his office later issued a verification letter to that effect. *Id.* at 7-10. After learning about CMDS's project, the City Councilman representing the Property's district, Ryan Dorsey, asked the City's

Department of Housing and Community Development ("DHCD") about the Property's use permissions. *Id.* at 11-15. Dorsey was concerned because he anticipated community opposition to the project (which did later materialize), and CMDS had told him that it would be able to use the Property as of right. *Id.* at 12, 15. DHCD employees extensively researched and considered the question before concluding that CMDS's plans constituted a "change" from the Property's previously approved conditional use and that City Council approval was therefore required under the applicable City Code provision. *Id.* at 15-20. After the City's Zoning Administrator denied CMDS's application for a U&O permit as of right, the City's Board of Municipal and Zoning Appeals ("BMZA") formally applied DHCD's "change" reasoning to hold that only the City Council could approve CMDS's requested use. *Id.* at 28-31. CMDS did not seek approval from the City Council. *Id.* at 32-33.

CMDS contends that the City's denial of its U&O application was a capitulation to the community's opposition to the project, which it argues was rooted in discriminatory and stereotypical beliefs about the individuals suffering from substance use disorders who would be treated at the Property. *Id.* at 37, 43-44. CMDS asserts that the denial was therefore illegally discriminatory in violation of the equal protection clause of the Fourteenth Amendment; Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; the Fair Housing Act ("FHA"), 42 U.S.C. § 3604(f); and the Rehabilitation Act ("RA"), 29 U.S.C. § 794.[1]

The court denied the City's motion for summary judgment as to the ADA and FHA claims, reasoning that, based on the evidence, a jury could conclude that consideration of the community's discriminatory opposition was a motivating factor in the City's decision to deny CMDS's U&O

---

[1] The court granted the City's motion for summary judgment on CMDS's other claims and they are not relevant to this motion for reconsideration.

2

application. *Id.* at 42-43, 44-45. But CMDS's evidence was insufficient to establish that discriminatory animus was the *sole* motivator as was required for the RA claim, and the court therefore granted the City's motion for summary judgment as to that count. *Id.* at 45-46. The court denied summary judgment on CMDS's equal protection claim because the City did not offer a reason to explain why it had granted the Property's prior owner a U&O permit without holding it to the requirements of the City Code, but strictly applied the Code to CMDS and denied its application. *Id.* at 48-51.

The City moved for reconsideration, arguing that the court erred by applying a "motivating factor" test to CMDS's discrimination claims under the ADA and the FHA, as opposed to a "but-for" test. Mot. at 2. The City reasons that the Fourth Circuit's decision establishing a "but-for" test for claims brought under Title I of the ADA in *Gentry v. E.W. Partners Club Management Co.* controls CMDS's claims under Title II of the ADA. *Id.* (citing 816 F.3d 228, 235 (4th Cir. 2016)). The City goes on to contend that *Gentry* also applies to CMDS's FHA claim, and asks for reconsideration of the equal protection claim. *Id.* at 7-10.

## LEGAL STANDARD

A motion for reconsideration of an interlocutory order is governed by Federal Rule of Civil Procedure 54(b), which permits the court to revise an order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties," "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017). Reconsideration "involves broad[] flexibility to revise interlocutory orders before final judgment as the litigation develops and new facts or arguments come to light." *Id.* (citing *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003)).

3

Under Rule 54(b), the ultimate resolution of a motion to reconsider is left to the court's discretion "subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *U.S. Tobacco Coop. Inc. v. Big South Wholesale of Va., LLC*, 899 F.3d 236, 257 (4th Cir. 2018) (quoting *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003)). "'[A] motion to reconsider is not a license to reargue the merits or present new evidence' that was previously availability to the movant." *Carrero v. Farrelly*, 310 F. Supp. 3d 581, 584 (D. Md. 2018) (quoting *Royal Ins. Co. of Am. v. Miles & Stockbridge, P.C.*, 142 F. Supp. 2d 676, 677 n.1 (D. Md. 2001)). Thus, the circumstances where reconsideration may be appropriate include "(1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice." *U.S. Tobacco*, 899 F.3d at 257 (quoting *Carlson*, 856 F.3d at 325). At bottom, "the goal is to reach the correct judgment under law." *Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 618-19 (D. Md. 2013) (quoting *Netscape Commc'ns Corp. v. ValueClick, Inc.*, 704 F. Supp. 2d 544, 547 (E.D. Va. 2010)).

**ANALYSIS**

The City argues that the Fourth Circuit's decision in *Gentry* requires application of a "but-for" causation standard for ADA Title II and FHA claims, and that the court erred by applying a "motivating factor" test of causation. Mot. at 4-6. The City's position is purely legal, and *Gentry*, which was decided nearly eight years before the court's summary judgment decision, cannot be "a change in applicable law." *See U.S. Tobacco*, 899 F.3d at 257. The City's reliance on *Gentry* is therefore an argument that the court's use of the "motivating factor" test was a "clear error causing manifest injustice." *Id.* The court disagrees.

In *Baird ex rel. Baird v. Rose*, the Fourth Circuit held that Title VII's "motivating factor" causation standard applied to ADA Title II claims because Title II's statutory causation standard "is significantly dissimilar" from that of the RA, which contains a causation standard prohibiting discrimination "solely by reason of [the plaintiff's] disability." 192 F.3d 462, 469 (4th Cir. 1999) (quoting 29 U.S.C. § 794(a)). To give effect to this difference, the Fourth Circuit reasoned that Title II's incorporation of Title VII's remedies provisions, *see* 42 U.S.C. § 12133, included adoption of its "motivating factor" causation standard, *Baird*, 192 F.3d at 470.[2]

The City argues that *Gentry* abrogated *Baird*, pointing to *Gentry*'s determination that the Supreme Court's decision in *Gross v. FBL Financial Services, Inc.* required application of a "but-for" causation standard to ADA Title I claims. *Gentry*, 816 F.3d at 234-35 (citing 557 U.S. 167 (2009)). The City notes that a footnote in *Gentry* explained that *Baird* was not controlling because it was an ADA Title II case decided "without the benefit of *Gross*," *id.* at 235 n.3 (citing *Baird*, 192 F.3d at 470), and contends that this language, along with *Gentry*'s reasoning, renders *Baird* obsolete.

But since *Gentry*, the Fourth Circuit and its district courts have consistently continued to recognize the vibrancy of *Baird*'s "motivating factor" standard in ADA Title II cases. In *Thomas v. The Salvation Army*, decided eight months after *Gentry* (and which the court cited in its summary judgment ruling as additional support for its use of the "motivating factor" standard), the Fourth Circuit explained in dicta that the RA has "a stricter causation requirement than the ADA or FHA, under which the disability can be one of multiple causes." 841 F.3d 632, 641 (4th Cir. 2016) (citing *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 461-62 (4th Cir. 2012) and *Asbury v.*

---

[2] The Fourth Circuit rejected an identical argument for applying the "motivating factor" causation standard to ADA Title I claims in *Gentry*. 816 F.3d at 234-35.

*Brougham*, 866 F.2d 1276, 1279 (10th Cir. 1989)). Two years later, in *Wicomico Nursing Home v. Padilla*, the court again differentiated the RA and ADA Title II, stating that "[t]o succeed on a claim under the Rehabilitation Act, the plaintiff must establish he was excluded 'solely by reason of' his disability; the ADA requires only that the disability was 'a motivating cause' of the exclusion." 910 F.3d 739, 750 (4th Cir. 2018) (quoting *Halpern*, 669 F.3d at 461-62). The *Wicomico* court went on to partially ground its affirmance of the dismissal of the ADA Title II claim on the plaintiff's "fail[ure] to plead that any Resident's alleged disability *motivated* the Secretaries to deny Medicaid benefits." *Id.* at 751 (emphasis added). In *Horton v. Methodist University, Inc.*, the court again quoted *Halpern* as setting forth the ADA standard "that the disability was a motivating cause of the exclusion." 788 F. App'x 209, 210 (4th Cir. 2019) (quoting *Halpern*, 669 F.3d at 461-62) (unpublished per curiam opinion). And most recently, in *Neal v. East Carolina University*, a Title II case, the Fourth Circuit restated that "the ADA's causation element can be satisfied by proof that disability was 'a' motivating factor (rather than the 'sole' reason) for the defendant's decision." 53 F.4th 130, 150 (4th Cir. 2022) (quoting *Haulbrook v. Michelin N.A.*, 252 F.3d 696, 703 (4th Cir. 2001)); *see id.* at 135 ("[I]n the ADA context, the Court has held that proving discrimination 'on the basis of' disability 'requires only that the disability was "*a motivating cause*" of the' university's decision." (quoting *Halpern*, 669 F.3d at 462 (emphasis in original))).

Judges in this District have also continued to cite the "motivating factor" standard since *Gentry*. *See, e.g.*, *Affinity Recovery Ctr., LLC v. Town Comm'rs of Sudlersville*, No. 23-cv-714-LKG, 2024 WL 149835, at *5 (D. Md. Jan. 12, 2024) (citing *Neal*, 53 F.4th at 135), *appeal docketed*, No. 24-1078 (4th Cir. Jan. 23, 2024); *Zajac v. Jordan*, No. 22-cv-1620-DLB, 2023 WL 2743363, at *4 (D. Md. Mar. 31, 2023) (quoting *Wicomico*, 910 F.3d at 750), *aff'd*, 2023 WL

5527846 (4th Cir. Aug. 28, 2023) (unpublished per curiam opinion); *Holly Hill Nursing LLC v. Padilla*, No. 17-cv-3554-PWG, 2018 WL 5013826, at *10 (D. Md. Oct. 16, 2018) (quoting *Thomas*, 841 F.3d at 641); *Morris v. Leon N. Weiner & Assocs., Inc.*, No. 16-cv-2860-TDC, 2017 WL 1169522, at *5 (D. Md. Mar. 28, 2017) (quoting *Baird*, 192 F.3d at 469-70); *cf. Ross v. Md. State Police Licensing Div.*, No. 15-cv-1402-TDC, 2016 WL 1161078, at *3 & n.1 (D. Md. Mar. 23, 2016) (quoting *Baird*, 192 F.3d at 470 but acknowledging that "[i]t is possible that a more stringent standard of causation applies in the wake of *Gross*").

In contrast, the court has not located any Fourth Circuit or District of Maryland case applying *Gentry*'s "but-for" causation standard outside of the employment context. *Cf. Kelly v. Town of Abingdon, Va.*, 90 F.4th 158, 169 (4th Cir. 2024) (applying *Gentry* in wrongful discharge case); *Davis v. Western Carolina Univ.*, 695 F. App'x 686, 688 (4th Cir. 2017) (applying *Gentry* in employment discrimination case) (unpublished per curiam opinion). Employment discrimination claims generally must be brought under ADA Title I. *See Reyazuddin v. Montgomery Cnty., Md.*, 789 F.3d 407, 421 (4th Cir. 2015).

The City's search for support does not seem to have fared any better. It cites *Israelitt v. Enterprise Services LLC* as applying *Gentry*'s "but-for" standard, but *Israelitt* was yet another employment case. No. 18-cv-1454-SAG, 2021 WL 795150, at *4-7 (D. Md. Mar. 2, 2021), *aff'd*, 78 F.4th 647 (4th Cir. 2023). The City also contends that *Bone v. University of North Carolina Health Care System* held that "it [is] unquestionable that *Gentry*'s 'but-for' causation standard applie[s] to Title II cases." Mot. at 5 (citing No. 18-cv-994, 2021 WL 395547, at *4 (M.D.N.C. Feb. 4, 2021), *report and recommendation adopted*, No. 18-cv-994, 2021 WL 3196437 (M.D.N.C. Mar. 31, 2021)). *Bone*'s holding is the opposite of the City's assertion. The quoted language on which the City relies is in turn quoted from one of the litigant's briefs in that case. *See Bone*, 2021

7

WL 395547, at *4 (quoting Docket Entry 51 at 16-17). In his analysis, Judge Auld reviewed post-*Gentry* case law and held that "[c]ontrary to UNC's contentions, *Gentry did not* abrogate *Baird* . . . . and *Baird*'s motivating cause standard 'continues to be controlling law in this circuit.'" *Id.* at *10 (quoting *Smith v. N.C. Dep't of Safety*, No. 18-cv-914, 2019 WL 3798457, *2 n.1 (M.D.N.C. Aug. 13, 2019)) (emphasis added). The City's final case, *Brady v. Board of Education of Prince George's County*, does not even involve ADA claims, and merely analogizes to ADA law in the context of a RA retaliation claim. 222 F. Supp. 3d 459, 474-75 (D. Md. 2016), *aff'd*, 707 F. App'x 780 (4th Cir. 2018) (unpublished per curiam opinion).

As a last resort, the City points to other circuits' decisions that ADA Title II claims require "but-for" causation under *Gross*. Of course, the court is bound to follow the precedent of *this* circuit, and should "'not lightly presume that the law of the circuit has been overturned' . . . or rendered 'no longer tenable.'" *Carrera v. E.M.D. Sales Inc.*, 75 F.4th 345, 352 (4th Cir. 2023) (quoting *Taylor v. Grubbs*, 930 F.3d 611, 619 (4th Cir. 2019) and *United States v. Brown*, 67 F.4th 200, 217 (4th Cir. 2023) (Heytens, J., concurring in the judgment)).

In *Baird*, the Fourth Circuit clearly and unequivocally held that the "motivating factor" standard applied to ADA Title II claims. 192 F.3d at 470. It has continued to cite that standard for such claims to this day. Whether *Gross* and *Gentry* have rendered *Baird* untenable may still be an open question, but the Fourth Circuit has not so held, and, given *Baird*'s apparent vitality, the court cannot conclude that applying the "motivating factor" standard in this case was "clear error." *U.S. Tobacco*, 899 F.3d at 257.

The City's FHA argument withers on the same vine. Because the argument was raised for the first time in this motion for reconsideration and is not supported by any post-*Gross* and *Gentry*

8

case law, the court finds that applying the "motivating factor" causation standard to CMDS's FHA claim was not "clear error." *Id.*[3]

The City does not get an opportunity to relitigate its argument *de novo* on a motion for reconsideration. *See id.* It made a strategic choice to relegate this contention to a speculative single sentence and footnote of its motion for summary judgment after acknowledging that *Baird* appeared to provide the relevant causation standard, City Mot. for Summ. J. at 31 & n.6, ECF 81-1; *see Sanders v. Callender*, No. 17-cv-1721-DKC, 2018 WL 337756, at *7 n.5 (D. Md. Jan. 9, 2018) (quoting *Hunt v. Nuth*, 57 F.3d 1327, 1338 (4th Cir. 1995)), and it will not now be permitted to retry its luck with the benefit of hindsight.

Furthermore, application of the "motivating factor" standard will not cause "manifest injustice." *U.S. Tobacco*, 899 F.3d at 257. As the court explained in denying summary judgment, the City can avoid liability for damages under the ADA if it can show that "it would have reached the same decision even in the absence of discriminatory considerations." Mem. Op. at 46 n.13 (citing *Baird*, 192 F.3d at 470; *Koon v. North Carolina*, 50 F.4th 398, 403 n.3 (4th Cir. 2022); 42 U.S.C. § 12133; 42 U.S.C. § 2000e-5(g)(2)(B); 42 U.S.C. § 2000e-2(m)). The Section 2000e-5(g)(2)(B) damages standard effectively functions as a "but-for" causation test. *See Baird*, 192 F.3d at 470 (citing *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1076 (11th Cir. 1996)). Thus, it is extremely likely that the question of "but-for" causation will be presented to and decided

---

[3] Additionally, the court notes that its finding that discrimination was not the sole cause of the City's decision does not mean that discrimination cannot be a "but-for" cause of that decision. The standards are distinct, *see McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1076-77 (11th Cir. 1996) (distinguishing RA's sole causation standard from a "but-for" causation standard), and a decision can have more than one "but-for" cause, *see Gentry*, 816 F.3d at 236 n.5 ("[W]e agree that 'a but-for' cause is the appropriate formulation.").

by a jury in any event, thereby obviating any injustice that might result should the Fourth Circuit decide to revisit *Baird*.

Finally, the City argues that "[t]he Court's equal protection decision would necessarily be affected if the Court determines, upon review, that Plaintiff has failed to prove its case under a 'but for' causation analysis," because "a 'but for' standard is already built into existing federal equal protection analysis." Mot. at 9. In other words, the City asks the court to revisit its equal protection decision based on no new law or facts. The City misunderstands the distinction the court drew between the discriminatory motivations at issue in the City's decision, considered in isolation, for the ADA and FHA claims, and the unexplained difference in treatment between similarly situated applicants on which the court focused for the equal protection claim. Moreover, rearguing the merits of a decision is improper on a motion for reconsideration. *Carrero*, 310 F. Supp. 3d at 584.

## CONCLUSION

For the above-stated reasons, the City's motion for reconsideration will be denied. A separate Order follows.

 __3/18/2024__   __/s/__
Date   Catherine C. Blake
   United States District Judge