IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CMDS RESIDENTIAL, LLC, | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. JKB-21-1774 |
| MAYOR & CITY COUNCIL OF BALTIMORE, | * | |
| | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

Now before the Court, by virtue of the Motion *in Limine* to Exclude Damages Evidence filed by Defendant Mayor & City Council of Baltimore ("City"), (ECF No. 118), are the following questions, among others: (1) whether punitive damages are available in this case and (2) whether Plaintiff CMDS Residential, LLC ("CMDS") can claim lost profits in the event it never had any legal right to open its proposed facility. (*See* ECF No. 118-1 at 15–16, 32–33.)[1]

Because the Court concludes that the answer to both questions is "no," as explained below, the availability of actual damages in this matter appears to turn on the outcome of parallel litigation in the Circuit Court for Baltimore City. *See In re CMDS Residential, LLC*, No. 24-C-24-000997 (Cir. Ct. Balt. City Feb. 27, 2024). This is because that litigation is addressed to the question of whether the City correctly interpreted the zoning code as requiring the denial of a necessary permit to CMDS.[2] If so, then CMDS never had a legal right to open its facility, and it therefore could not

---

[1] For purposes of this Memorandum and Order, the Court does not address the other arguments the City raises in its Motion *in Limine*. The Motion will remain open pending further action from the Court.

[2] The prelitigation facts and early procedural history are set out at length in the Court's decision dated February 1, 2024. (*See* ECF No. 84 at 2–33), reproduced as *CMDS Residential, LLC v. Mayor & City Council of Balt.*, 714 F. Supp. 3d 583, 592–609 (D. Md. 2024). In brief, the case concerns the City's denial of a use-and-occupancy permit sought by CMDS to operate a residential substance-abuse treatment facility. The City insists it had legitimate, zoning-related reasons to deny the permit. But CMDS says the City illegally withheld the permit on the basis of discriminatory

have incurred any damages due to lost business. But if not, then CMDS may still be able to show that it lost out on profits it was reasonably certain to attain.

Given that the outcome of the parallel litigation could profoundly change the complexion of the upcoming trial in the federal case, the Court will set in a hearing for April 8, 2025, at 11 a.m. to consider the propriety of a stay pending the resolution of the parallel litigation.

I.   ANALYSIS

Upon the Court's decision on the parties' cross-motions for summary judgment, CMDS's remaining claims are for violations of the equal-protection guarantees of both the federal and state constitutions; violations of the discriminatory-administration and discriminatory-requirements of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12132–33; and violations of the antidiscrimination provisions of the Fair Housing Act ("FHA"), *id.* § 3604(f). (*See* ECF No. 84 at 34–68), *reproduced as CMDS Residential, LLC v. Mayor & City Council of Balt.*, 714 F. Supp. 3d 585, 610–30 (D. Md. 2024). To vindicate those claims, CMDS seeks, in addition to various forms of prospective relief, actual (compensatory) damages, punitive damages, and attorneys' fees and costs. (ECF No. 1 at 44–45.)

A.   **Punitive Damages Are Unavailable Against the City**

Punitive damages are not recoverable in this case. CMDS presses its federal constitutional claims under 42 U.S.C. § 1983. (ECF No. 1 ¶¶ 159–70.) But the Supreme Court has made clear that, under that statute, punitive damages are categorically unavailable against municipalities. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Nor can a local government be liable for punitive damages on CMDS's state constitutional claims. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-303(c)(1). Punitive damages are likewise unavailable against a public entity under the ADA. *See Barnes v. Gorman*, 536 U.S. 181, 184–85, 189–90 (2002).

---

community animus toward CMDS's anticipated residents.

That just leaves CMDS's FHA claim. The Court concludes that punitive damages are unavailable against a municipality under that statute, too. As the Supreme Court explained in *Fact Concerts*, "[p]unitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct." 453 U.S. at 266–67. But neither of those goals—punishment or deterrence—is realistically achievable by assessing punitive damages against a public entity. "Regarding retribution, it remains true that an award of punitive damages against a municipality 'punishes' only the taxpayers, who took no part in the commission of the tort." *Id.* at 267. And as for deterrence, the Supreme Court listed "several reasons" why that, too, cannot be realized—among them, that "it is far from clear that municipal officials . . . would be deterred from wrongdoing by the knowledge that large punitive awards could be assessed based on the wealth of their municipality"; that there is "no reason to suppose that corrective action . . . will not occur unless punitive damages are awarded"; that there exists "a more effective means of deterrence," namely, liability for individual tortfeasors; and that, "although the benefits associated with awarding punitive damages against municipalities . . . are of doubtful character, the costs may be very real." *Id.* at 268–71. Simply, "considerations of history and policy do not support exposing a municipality to punitive damages for the bad-faith actions of its officials." *Id.* at 271.

While *Fact Concerts* was a case interpreting the availability of punitive damages against municipalities under 42 U.S.C. § 1983, its reasoning applies—and has been applied—broadly. To start, the Supreme Court has repeatedly reaffirmed *Fact Concerts*' core principle without reference to § 1983. *See, e.g.*, *Barnes*, 536 U.S. at 190 (acknowledging "the traditional presumption against imposition of punitive damages on government entities"); *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 784–85 (2000) (similar); *id.* at 785 n.15 (stating that *Fact Concerts* is best understood as being "concerned with imposing punitive damages on taxpayers *under any*

*circumstances*" (emphasis added)); *cf. Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 544 (1999) ("It is 'improper ordinarily to award punitive damages against one who himself is personally innocent and therefore liable only vicariously.'" (quoting Restatement (Second) of Torts § 909, at 468, cmt. b (1979))).

What's more, many courts, including this one, have expressly extended that presumption to the FHA. *See, e.g., Jennings v. Hous. Auth. of Balt. City*, Civ. No. WDQ-13-2164, 2014 WL 346641, at *9 (D. Md. Jan. 29, 2014) ("Neither the FHA, nor the Housing Act, explicitly authorize punitive damage awards against local governments, and [the plaintiff] has not identified any reason to depart from the general rule that local government entities are not liable for punitive damages." (collecting cases)); *White v. City of Annapolis ex rel. City Council*, 439 F. Supp. 3d 522, 548 (D. Md. 2020); *Lundregan v. Hous. Opportunities Comm'n*, Civ. No. PJM-19-1369, 2020 WL 2218928, at *4 (D. Md. May 7, 2020); *5-Star Athlete Dev., LLC v. City of Shelby*, Civ. No. 21-323-MR-WCM, 2022 WL 4287921, at *6 (W.D.N.C. May 26, 2022); *Hispanics United of DuPage Cnty. v. Village of Addison*, 958 F. Supp. 1320, 1331–33 (N.D. Ill. 1997). Indeed, the force of that presumption is so powerful that it applies *despite* the FHA's express authorization of punitive damages as a general matter, 42 U.S.C. § 3613(c)(1). *See, e.g., Inland Mediation Bd. v. City of Pomona*, 158 F. Supp. 2d 1120, 1158–59 (C.D. Cal. 2001) ("The FHA's general provision regarding the availability of punitive damages is simply not sufficient under *Fact Concerts*.").[3]

---

[3] In its response to the City's Motion *in Limine*, CMDS relies heavily on a Second Circuit case that held the FHA to authorize punitive damages against municipalities, despite the general presumption to the contrary. *See Gilead Cmty. Servs., Inc. v. Town of Cromwell*, 112 F.4th 93, 104 (2d Cir. 2024) ("Congress did not need to specifically authorize punitive damages against municipalities. Authorizing punitive damages without exception in a statute that generally subjects municipalities to liability was sufficient."); (*see also* ECF No. 119 at 33–34). But given the detailed reasoning of *Fact Concerts* and its progeny, along with the ample authority—including from this Court—applying that reasoning to the FHA, this Court is ultimately unpersuaded by the Second Circuit's analysis. And because that analysis is nonbinding here, the Court is free to adopt its own conclusion (and the conclusion of the majority of other courts to have addressed the question).

All of this strongly disfavors a conclusion that punitive damages are available under the circumstances of this case. In the words of the First Circuit, "'blameless or unknowing' taxpayers would be punished by imposing punitive damages here. The actions of a small [group] of [people] would burden several thousand nonparticipants, many of whom were presumably unaware of the entire controversy." *Cf. Heritage Homes of Attleboro, Inc. v. Seekonk Water Dist.*, 670 F.2d 1, 2 (1st Cir. 1982). Seeing no reason to depart from the general—and well-supported—rule, the Court concludes that punitive damages are not available to CMDS with respect to any of its claims.

### B.  CMDS Has No Actual Damages Without a Legal Entitlement to Operate

Although CMDS is correct that "[b]usinesses may recover projected lost profits from a venture that was never realized," (*see* ECF No. 119 at 18), that principle plainly presupposes that the venture *could* be realized. After all, "[d]amages may not be awarded . . . where an award would be based on an estimate of lost profits which is speculative." *Lavay Corp. v. Dominion Fed. Sav. & Loan Ass'n*, 830 F.2d 522, 529 (4th Cir. 1987). And "[c]ourts generally reject allegations of lost profit as too speculative where the profits were contingent on obtaining government approval." *In re Oil Spill by Oil Rig "Deepwater Horizon"*, Civ. No. CJB-16-6585, 2021 WL 3432595, at *3 (E.D. La. Aug. 5, 2021) (collecting cases).

A lack of any legal entitlement to open a facility (or, to put it another way, a legal *barrier* to doing so) makes any estimate of lost profits *per se* speculative. Far beyond profits being merely "contingent" on government approval, a situation in which it is *known* that there is no legal right to launch a business—*e.g.*, by virtue of a prohibition in the zoning law—necessarily forecloses any business that might otherwise have been realized. Indeed, the issue extends beyond whether profits are "reasonably certain," *e.g.*, *Meineke Car Care Ctrs., Inc. v. RLB Holdings, LLC*, 423 F. App'x 274, 284 (4th Cir. 2011)—which, by definition, they are not—and into whether an award would even be appropriate for a court to enter. This is but one application of "the basic notion that

no court will lend its aid to one who founds a cause of action upon an immoral or illegal act." *See United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 42 (1987); *cf. Shulman v. Kaplan*, Civ. No. 19-5413-AB, 2020 WL 7094063, at *2 (C.D. Cal. Oct. 29, 2020) (declining to award lost profits to cannabis business on ground that business violated federal drug laws). In short, where the law (including the zoning law) forbids a business from opening, lost profits—along with measures of damages that rely crucially on the assumption that a business is allowed and able to operate—are not recoverable.

## II.   FURTHER PROCEEDINGS

Because punitive damages are not recoverable, as a matter of law, in this case, any potential monetary award to CMDS could consist of only (1) either actual damages or nominal damages and (2) attorneys' fees and costs. But the parties indicate that the parallel litigation in the Circuit Court for Baltimore City is directed to the question of whether the City was correct in its interpretation of the municipal zoning code or whether it acted arbitrary or capriciously in denying a use-and-occupancy permit to CMDS. (*See* ECF No. 118-1 at 8–9, 15–16; ECF No. 119 at 12, 16–19); *see also CMDS*, 714 F. Supp. at 628–29 ("CMDS's judicial review claim presents a question of state law and challenges the correctness of the [zoning authority's] interpretation of the City Code."). To the extent the parallel litigation determines that the City *was* correct, it appears, *ipso facto*, that CMDS had no legal entitlement (and therefore no legal ability) to open its proposed facility—irrespective of the possibility that the City simply "got[] to the right answer in the wrong way," *i.e.*, by way of unconstitutional discrimination. *See CMDS Residential, LLC v. Mayor & City Council of Balt.*, Civ. No. CCB-21-1774, 2024 WL 3849523, at *2 (D. Md. Aug. 16, 2024). And

6

as the Court explained above, that is fatal to any claim of actual damages, including lost profits.[4] *See supra* Section I.B.

For that reason, the outcome of the state-court litigation appears to bear significantly on the stakes of the federal discrimination claims set for trial in this Court on April 28, 2025, (*see* ECF No. 111)—even though, as the Court emphasized earlier in the life of this case, the issues raised by the two cases are analytically distinct and independently triable. *See generally CMDS*, 2024 WL 3849523. The question thus again arises of whether it is appropriate to postpone the trial in this case pending the outcome of the parallel litigation. The Court will consider this issue in a hearing next week, prior to the already scheduled Pretrial Conference.

Accordingly, it is ORDERED that a HEARING is set in for April 8, 2025, at 11 a.m. in Courtroom 5A, United States Courthouse, 101 W. Lombard St., Baltimore, MD 21201, to address the propriety of a stay under the circumstances described above.

DATED this 4 day of April, 2025.

BY THE COURT:

/s/ James K. Bredar

James K. Bredar
United States District Judge

---

[4] The Court does not at this time address the issue of whether, in the event the state-court litigation determines that the City did *not* interpret the zoning law correctly—and therefore that the zoning law did not require or allow the City to deny CMDS a use-and-occupancy permit—CMDS has shown its expert's lost-profits estimates to be reasonably certain and the fruits of reliable methodology. The City raises these and other arguments in its Motion *in Limine*. (*See generally* ECF No. 118-1.) The Court will address those arguments if and when appropriate, in light of any potential changes this Order may precipitate in the proceedings of this case.